# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Marc LaMarca, et al,, | ) | CASE NO.  5:09 CV 2397 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE DAVID DOWD |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| United States of America, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This case is before the Court on the motion of defendant United States of America to dismiss plaintiffs' third amended complaint (ECF 107), and the motion of defendants Early Flurkey, Jon Greenblatt, Douglas Parrott, Gary Pawlak, and the United States of America to dismiss plaintiffs' third amended complaint, or alternatively, for summary judgment (ECF 109).[1]  For the reasons that follow, defendants' motions to dismiss are GRANTED.

### PLAINTIFFS' THIRD AMENDED COMPLAINT

A.      The Parties

The plaintiffs in this case are Marc LaMarca (LaMarca), Beauty Enterprises, Inc. dba Vogue Beauty Academy (Vogue),  Charmayne, Inc. dba Charmayne

---

[1] Plaintiffs opposed defendant United States' motion (ECF 114), to which defendant replied (ECF 117).  Plaintiffs also opposed defendant Flurkey, Greenblatt, Parrott, and Pawlak's motion to dismiss (ECF 115), to which defendants replied (ECF 118).  Both plaintiffs and defendants filed supplemental briefs (ECF 139 and 141,  respectively).

1

Beauty Academy (Charmayne), and Anne Kaufman (Kaufman).  Plaintiffs Vogue and Charmayne (collectively, the Schools) are privately owned for-profit corporations offering diplomas in basic cosmetology and cosmetology management.

Plaintiff LaMarca is a 50% owner of the Schools and Senior Vice President/Chief Executive Officer of the Schools. Plaintiff Kaufman is a 50% owner of the Schools and Secretary/Vice President of the Schools.

According to the third amended complaint, defendant United States of America is a named party due to alleged actions by the United States Department of Education (DOE) and its investigative arm, the Office of the Inspector General (DOE-OIG).  The DOE is responsible for carrying out the requirements of the Higher Education Act of 1965 (HEA), including compliance and enforcement.  Pursuant to Title IV of the HEA, the government provides financial assistance to students meeting program requirements. One such financial assistance program is the Pell Grant program.

Defendant Douglas Parrott (Parrott), during all relevant times, was the DOE Area Case Director for Region V.  Defendant Earl Flurkey (Flurkey) was the DOE Region V Leader for the Federal Student Aid Program.  Defendants Jon Greenblatt (Greenblatt) and Gary Pawlak (Pawlak) were Special Agents with the DOE-OIG.

Plaintiffs' third amended complaint alleges violations of the First, Fourth and Fifth Amendments to the United States Constitution, and breach of contract, in connection with the "forced closing of [the Schools] and the wrongful prosecution of the Schools' Chief Executive Officer.

2

B.          Plaintiffs' Factual Assertions

Title IV of the Higher Education Act permits post-secondary institutions to participate in federal student financial aid programs, including the Pell Grant program. Institutions participating in the Pell Grant program must enter into a written contract with the DOE called a Program Participation Agreement (PPA). Pell Grant funds for eligible students are sent directly to participating institutions to pay for eligible students' tuition and fees.  If a student withdraws or does not complete her coursework, participating institutions may have to refund to the DOE the Pell Grant funds for that student.

The DOE's Office of Student Financial Aid and/or the DOE-OIG monitors the academic progress, recordkeeping, and refunds of eligible students and participating institutions for compliance with Title IV's requirements.  This monitoring includes program reviews and inspections of participating schools, including reviews and inspections of school records.

The Schools became participants in the Pell Grant program in 1975.  In 1998, the DOE converted Pell Grant processing from a paper to an electronic format. Both the Schools and the DOE experienced difficulties in electronically submitting and processing Pell Grant applications.  As a consequence, from 1998-2000, plaintiffs allege that the DOE did not forward "substantial amounts of Pell Grant monies due and owing to the Schools for student tuitions," which the Schools estimate to be approximately $600,000.  ECF 96, par. 18-20.

During this same time, the Schools owed Pell Grant refunds to the DOE for students who dropped out before completing their coursework or who were later determined ineligible for Pell Grant assistance.   Plaintiffs assert that pursuant to

3

§ 490(d)(7) of the HEA and 10 U.S.C. § 1094(c)(7), the Schools were entitled to offset refunds due to the DOE against Pell Grant funds due to the Schools.  According to plaintiffs, the Schools did not pay refunds due the DOE because of cash flow problems created by the DOE's failure to pay the Schools Pell Grant funds for eligible students. The estimated refund owed to the DOE by the Schools was about $430,000, but that number has not been definitively determined by the DOE.  According to plaintiffs, the Schools offered to escrow $1,000,000 towards the DOE's claim of unpaid refunds while the exact refund due was determined.

In October 2000, the DOE-OIG conducted an unannounced inspection of the Schools' records.  Plaintiffs assert that this inspection was prompted because of the Schools' complaints regarding unpaid Pell Grant funds owed by DOE to the Schools.

In connection with the Pell Grant funds which plaintiffs claim were due but unpaid by the DOE, LaMarca sought the assistance of Congresswoman Stephanie Tubbs-Jones, who contacted the DOE regarding Pell Grant monies due the Schools. Despite her intervention, plaintiffs allege that the DOE did not provide ISAR forms (Individual Student Aid Report) to the Schools which were needed to document the eligibility of students for Pell Grant funds.

In December 2002, LaMarca sought permission from the Schools' accrediting agency, the National Accreditation Commission of Cosmetology Schools (NACCAS), to convert the Schools from a clock hour program to a credit hour program. LaMarca's stated reason for converting from a clock hour program to a credit hour program was to reduce refunds owed to the DOE because students need not demonstrate actual time in class to avoid a refund situation, the student need only pass the class.   ECF
4

96, par. 39-42.  NACCAS approved the Schools switch to a credit hour program in June 2003.

Plaintiffs allege that Parrott was "personally opposed" to credit hour programs for vocational schools.  According to the third amended complaint, Parrott "privately stated" he would "come down hard" on any cosmetology schools attempting to convert to a credit hour program.  Plaintiffs allege that Parrott conspired with Flurkey to close the Schools to prevent them from operating under a credit hour program.

According to plaintiffs, this conspiracy took the form of a program review of the Schools in June 2003 and placement of the Schools on a reimbursement format. A reimbursement format meant that Pell Grant funds would be paid by the DOE after the students completed the coursework, and not at the beginning of the academic term.  The reason cited by Parrott for placement of the Schools on a reimbursement format was the Schools failure to make required refunds to the DOE for withdrawn students during the 2001-02 and 2002-03 academic years, and the DOE's statutory right to impose reimbursement format funding and to set off funds due the Schools against refunds the Schools owed the DOE.  Parrott required the Schools to return all Title IV refunds due from July 1, 2000 to present before the DOE would pay any Pell Grant funds to the Schools.  Plaintiffs claim that Parrott ignored the Schools right to offset payment of refunds against Pell Grant funds due the Schools from the DOE.  An irresistible force meets an immovable object.

In response to placement of the Schools on a reimbursement format, LaMarca began a "letter writing campaign" to various government officials, including the President of the United States, accusing Parrot of punishing the Schools for converting to

5

a credit hour program. Plaintiffs allege that these letters prompted "political inquiries" to the DOE, which angered Parrott and caused him to assign Flurkey "to deal with the issue." ECF 96, par. 54-56.

In July 2003, the Schools submitted a reimbursement request for Pell Grant funds for the 2003-2004 School year that began in June 2003. Plaintiffs estimate that the DOE owed the Schools about $500,000 in Pell Grant funds for the June 2003-December 2003 term.

The reimbursement request contained a CEO Certification Statement signed by LaMarca certifying that "all Title IV refunds had been made as required by federal regulations." Plaintiffs claim that the certification was prepared by a "third party reimbursement specialist" who was aware that the Schools had unpaid refunds due the DOE, but advised LaMarca that each academic year was considered on a "stand alone" basis, and that LaMarca's certification only applied to refunds for the 2003-2004 academic year and not to refunds owed to the DOE from prior academic years.

However, plaintiffs allege that the DOE ignored the "stand alone" policy and determined that LaMarca's certification was "false." According to the third amended complaint, Parrott and Flurkey contacted the DOE-OIG to begin a criminal investigation into LaMarca's handling of the Schools' refunds to the DOE and "false" certification statement.

On September 29, 2003, the DOE issued its Preliminary Program Review (PPR) for the inspection of the Schools conducted by the DOE earlier in June 2003. The PPR references the unpaid refunds owed to the DOE by the Schools, but plaintiffs complain that the PPR made no reference to the Schools' right to offset refunds due the

6

DOE against Pell Grant funds due the Schools.  However, plaintiffs recognize that there is an administrative process available to resolve these issues, as reflected in paragraph 69 of the third amended complaint:

> The issuance of the PPR automatically set into motion the due process procedures available to the Schools pursuant to subpart H of the HEA. These due process requirements include an "on the record" evidentiary hearing and findings by an impartial judicial officer. Such process would necessarily bring into issue the amount of refunds owed by the Schools vs. the amount of unpaid Pell Grants owed by the USDOE, thereby enforcing the Schools offset rights.

The HEA requires the Schools to respond to the PPR in thirty (30) days. However, the Schools' operating records, files, computers, and Pell Grant applications were seized on October 2, 2003 pursuant to a search warrant obtained by Greenblatt and Pawlak in connection with the DOE-OIG's criminal investigation of LaMarca.  Plaintiffs allege that the affidavits submitted to the U.S. Magistrate Judge contained incomplete and false information, "including but not limited to the statements that the Schools 'had failed to pay refunds in violation of 20 USC 1097(a)' and further that the Schools 'submitted false certification statements . . . which fraudulently alleged that the [Schools] were current in their payment of refunds.'"  ECF 96, par. 72.  Plaintiffs claim that Greenblatt and Pawlak presented these statements to the U.S. Magistrate Judge even though Greenblatt and Pawlak "were well aware of the unpaid Pell Grant monies owed by the USDOE to the Schools and the legal right of the Schools to offset the refunds owed to the USDOE against the unpaid Pell Grant monies."  ECF 96, par. 73.  Plaintiffs allege that the defendants knew that the Schools could not respond to the PPR without their records.

The DOE advised that Schools that until there was an accounting of refunds owed to the DOE, the Schools were not eligible for Title IV monies.

One week after the Schools' records were seized, the NACCAS scheduled a routine re-accreditation review. However, the re-accreditation review was not conducted because the Schools' records were in the possession of the DOE-OIG and not available for review. According to the complaint, the Schools closed in December 2003 as a consequence of financial difficulties, and inability to complete an accreditation review or respond to the PPR.

On January 17, 2007, LaMarca was charged in a four-count indictment relating to the Schools failure to pay refunds. *See* Northern District of Ohio Case No. 5:07 CR 38. In order to obtain an indictment, plaintiffs allege that defendants Pawlak and/or Greenblatt failed to inform the grand jury of the Schools' alleged right to offset refunds due the DOE against Pell Grant funds owed the Schools. LaMarca was acquitted after a jury trial.

After LaMarca's acquittal, plaintiffs' third amended complaint alleges that "75 of the more than 140 seized boxes were returned to the Schools."  However, plaintiffs claim that the records were "in total disarray."  ECF 96, par. 95-96.[2]

C.      Plaintiffs' Claims and Prayer for Relief

Plaintiffs' third amended complaint asserts six counts based on the facts alleged: Count 1 - violation of the Fifth Amendment by defendants Parrott, Flurkey, Pawlak and Greenblatt by taking actions which resulted in the closure of the Schools

---

[2]  In addition, as the public record reflects in LaMarca's criminal case, at least some of the documents seized from the Schools were available to LaMarca in his criminal Case No. 5:07 CR 38.  *See e.g.* ECF 80.

8

without due process and compensation, including the right to offset refunds against funds owed by the DOE; Count 2 – violation of the Fourth Amendment by defendants Greenblatt and Pawlak by providing false and misleading information to the U.S. Magistrate Judge to obtain a warrant to seize the Schools records regarding refunds and offsets, resulting in the inability of the Schools to participate in the Pell Grant program and receive accreditation; Count 3 – violation of the First Amendment by defendants Parrott and Flurkey, who were offended by LaMarca's public allegations of unfair treatment and who failed to pay Pell Grant funds due the Schools or recognize the School's right to offset refunds; Count 4 – violation of the Fifth Amendment by defendants Greenblatt and Pawlak by making false and misleading statements to the grand jury, similar to the false and misleading statements made to the U.S. Magistrate Judge to obtain the search warrant, resulting in the wrongful and unjust criminal prosecution of LaMarca ; Count 5 – breach of contract by the United States of America for failing to follow HEA Pell Grant regulations and recognize that the Schools were entitled to offset refunds against DOE Pell Grant funds due the Schools; and Count 6 – violation of the HEA, Administrative Procedures Act, and the Inspector General Act of 1978 by defendant United States of America for failing to provide opportunity for an evidentiary hearing prior to terminating student Pell Grant funding to Schools and for due process pertaining to determination of refund liabilities and offsets.

As a consequence of these alleged violations, plaintiffs seek:

1. A declaration that the United States breached its contractual obligations to the Schools;

2. A declaration that the DOE violated the HEA;

9

3.      An order compelling the DOE to return the Schools records or admit the records are lost;

4.      An order compelling the DOE to pay the Schools Pell Grant funds for the 1998-1999 academic year in the sum of $ 343,140;

5.      An order compelling the DOE to provide the Schools with ISARS for the 1998-1999 and 1999-2000 academic years and process payments therefor;

6.      An order compelling the DOE to process the reimbursement packages submitted by the Schools for the time period from June 2003 to December 2003.


APPLICABLE LAW

A.      Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on the basis that the court lacks subject matter jurisdiction. When subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists.   *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990); *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n.*, 287 F.3d 568, 573 (6th Cir. 2002).

A Rule 12(b)(1) motion may take the form of a facial challenge or a factual challenge. A facial challenge merely questions the sufficiency of the pleadings. A factual attack challenges the veracity of the factual basis for subject matter jurisdiction.

*See RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996);
*Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990).

Rule 12(b)(1) facial attacks to subject matter jurisdiction challenges the
sufficiency of the pleadings.  In such cases, courts apply the Rule 12(b)(6) standard and
the court must accept the alleged facts to be true and determine if those facts are
sufficient to state a claim for relief that is plausible on its face.  *Ohio Nat'l Life Ins. Co. v.
United States*, 922 F.2d 320, 325 (6th Cir. 1996); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949
(2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  However, even on a
motion to dismiss for failure to state a claim (Rule 12(b)(6)), there are certain documents
that a court may consider without converting a motion to dismiss for summary judgment.
Such documents include "'matters of public record, orders, items appearing in the record
of the case, and exhibits attached to the complaint,' as well as 'documents that a
defendant attaches to a motion to a dismiss . . . if they are referred to in plaintiff's
complaint and are central to her claim.'"  *Washington v. Roosen, Varchetti & Oliver,
PPLC*, 894 F. Supp 2d 1015, 1030 (W.D. Mich. 2012) (quoting *Amini v. Oberlin Coll.,*
259 F.3d 493, 502 (6th Cir. 2001)).

Unlike a Rule 12(b)(1) facial challenge, when the facts underlying subject
matter jurisdiction are challenged the court does not presume that those factual
allegations are true, and may look beyond the pleadings and weigh competing evidence to
determine if subject matter jurisdiction exists without converting the Rule 12(b)(1)
motion to a motion for summary judgment.  *See Ohio Nat's Life Ins. Co., v. United
States*, 922 F.2d 320, 325 (6th Cir. 1990); *RMI Titanium Co.*, 78 F.3d at 1143.

11

B.      Rule 12(b)(6)

In order to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, plaintiff must allege facts which, if accepted as true, "raise a right to relief above the speculative level" and "state[s] a claim to relief that is plausible on its face." *Hensley Mfg v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In order to be plausible, plaintiffs must plead facts that permit a reasonable inference that defendant is liable for the alleged conduct. *Ashcroft*, 556 U.S. at 677. The Court must accept as true all well-pleaded factual allegations, but does not accept as true legal conclusions couched as factual allegations. *Twombly,* 550 U.S. at 555.

## ANALYSIS

A.      Defendant United States of America's Motion to Dismiss (ECF 107)

Defendant United States of America moves to dismiss plaintiffs' third amended complaint pursuant to Rules 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim) of the Federal Rules of Civil Procedure.

      1.    Count 6

Count 6 of plaintiffs' complaint alleges that defendant United States of America, through the DOE, failed to follow the statutes, regulations and other laws which regulate Pell Grant funds, and that the DOE's administration and oversight of the Schools' participation in the Pell Grant program was arbitrary and capricious. In doing so, plaintiffs claim that the United States violated the HEA, Inspector General Act, and Administrative Procedures Act.

12

Defendant United States contends that Count 6 should be dismissed for failure to state a claim under either the HEA or the Inspector General Act because there is no private right of action under the HEA or the Inspector General Act.  The United States also argues that Count 6 should be dismissed because there has been no final agency action, which is a prerequisite to the Court's review of the Schools' complaints regarding the DOE's actions concerning the School's participation in the Pell Grant program.

In opposing defendant's motion, plaintiffs state that Count 6 does not assert a private right of action under the HEA or the Inspector General Act, but a claim for review and relief based on the failure of the DOE to comply with the procedural requirements found in the statutes, regulations and laws governing Pell Grant funds pursuant to a principle known as the "Accardi Doctrine," as first articulated in *United States ex rel.Accardi v.Shaughnessy*, 347 U.S. 260 (1954).  Specifically, plaintiffs claim that the DOE did not comply with the following: 1) notice and opportunity for a hearing prior to terminating the availability of Pell Grant funds; 2) due process in determining the Schools refund liabilities; 3) compliance with the statute regarding reimbursements, refunds, and offsets; 4) written notice of agency action regarding right to offset and request mediation; and 5) uniform application of the regulations.  ECF 114, p. 25. Based on the Accardi Doctrine, plaintiffs argue that the Court has jurisdiction to review and mandate the DOE's compliance the regulations, statutes and laws governing the Schools participation in the Pell Grant program.  Plaintiffs describe the United States' position that the Court's review of the DOE's alleged conduct cannot take place in advance of a final agency action as a

13

> galling attempt to avoid complying with the same
> regulatory procedures that it claims be binding on
> Plaintiffs.   There is no provision under the APA for
> challenging an agency's refusal to allow a party access to
> the procedures set out in the pertinent statute and/or
> regulations, including an agency's issuance of a final
> determination letter.  The logical extension of Defendant's
> argument would be that a federal agency has unfettered
> license to skirt its own procedures by seizing and refusing
> to return records.  Such a denial of established due process
> rights . . . cannot be countenanced by federal law.

ECF 114, pp. 28-29.

The sovereign immunity of the United States extends to federal agencies, which are immune from suit absent a waiver of sovereign immunity.  *Wells Fargo Bank v. Favino*, 2011 WL 1256771 (N.D. Ohio 2011) (citing *Whittle v. U.S.*, 7 3d. 1259, 1262 (6th Cir. 1993)). Section 702 and 704 of the Administrative Procedures Act (APA) provides a limited waiver the government's sovereign immunity with respect to "final agency actions." Pursuant to 5 U.S.C. § 704, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." In the absence of a "final agency action" under the APA, the district court does not have subject matter jurisdiction over the complaint. *CareToLive v. vonEschenbach*, 525 F.Supp.2d 938, 948 (S.D. Ohio 2007) (citing *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir. 2004)).[3]  Two conditions must be satisfied in order for an agency action to be "final."  First, the action must mark the "consummation" of the agency's decision making process.  Second, the action must be one by which rights

_____

[3]  Even if a "final agency action" is not jurisdictional, a final agency action is at least a necessary element of a cause of action under the APA, and required to plead sufficient facts to state a claim.  *Frazier v. U.S. Dept. of Educ.*, 2011 WL 2580295 n. 5  (S.D. Ohio 2011).

14

and obligations have been determined or from which legal consequences flow.  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  In this case under the HEA's statutory scheme, after plaintiffs respond to the PPR and the DOE issues a Final Program Review Determination, that final agency action is subject to judicial review pursuant to the procedures provided in 34 CFR pt. 668, subpt. H; *see* 34 CFR §§ 668,111-24.

As reflected in the third amended complaint, plaintiffs recognize that there is an administrative procedure available to resolve the Schools' allegations regarding the DOE's administration of the Schools' participation in the Pell Grant program.  Plaintiffs alleged constitutional violations based on defendants alleged failure to follow the statutory and regulatory due process provisions of the HEA for Pell Grant fund participants are directly intertwined with the issues that plaintiffs acknowledge can be addressed in the administrative process. According to paragraph 69 of the third amended complaint:

> The issuance of the [Preliminary Program Review] automatically set into motion the due process procedures available to the Schools pursuant to subpart H of the HEA. These due process requirements include an "on the record" evidentiary hearing and findings by an impartial judicial officer. Such process would necessarily bring into issue the amount of refunds owed by the Schools vs. the amount of unpaid Pell Grants owed by the USDOE, thereby enforcing the Schools offset rights.

Plaintiffs' third amended does not allege that the Schools responded to the Preliminary Program Review or that the DOE ever issued a final program review.  On its face, the Court lacks jurisdiction under the APA.[4]

---

[4] If plaintiffs' third amended complaint can be construed to allege that there has been a final agency action

Plaintiffs' third amended complaint claims that because the DOE-OIG seized the Schools' records, the Schools did not – could not – respond to the PPR. However, in a related case, plaintiffs concede that at least up until LaMarca was acquitted, the government had a legally recognized reason for holding the Schools records pursuant to the detention of goods exception to the United States' waiver of sovereign immunity pursuant to the Federal Tort Claims Act, and the Court determined in that related case that the detention of goods exception applied to the seizure of the Schools' records under the facts of this case.   *See* Case No. 1:12 CV 664. Since LaMarca's acquittal, plaintiffs acknowledge in the third amended complaint that at least half the records have been returned, and during the course of this case additional records were returned.

Further, if plaintiffs claim that they do not have the documents necessary to avail themselves of the administrative process, which at plaintiffs' request has been indefinitely stayed, how will plaintiffs establish before this Court the amount of DOE Pell Grant funds that plaintiffs have asked this Court to compel the DOE to pay?[5]  In order to make that determination, the Court would be required to undertake the very same analysis – and review the very same records – that would be undertaken by an impartial hearing officer in the administrative process to determine amount of Pell Grant funds due from the DOE, the refunds owed by the Schools, and any competing offset rights. Whether the

---

with respect to the PPR, then defendant's Rule 12(b)(1) challenge is a factual challenge, and the Court concludes, based on its examination of the record and the declarations of the DOE's general counsel, that the administrative action has been indefinitely stayed at the request of plaintiffs and no final agency action has been issued with respect to the PPR. ECF 109-2.

[5] Mandamus is an extraordinary writ that will not issue where there exist other administrative or legal remedies have not been exhausted. *See Slone v. Secretary of Health and Human Services*, 825 F.2d 1081 (6th Cir. 1987).

Schools' constitutional rights were violated in connection with the administration of the Pell Grant program depends on the outcome of the final agency action, which may then be subject to judicial review.  *See American Ass'n of Cosmetology School v. Riley*, 170 F.3d 1250 (9th Cir. 1999).

It is the administrative agency's statutory and regulatory role to interpret the rules and regulations applicable to the Pell Grant program and apply those rules to the facts specific to the Schools' participation in the Pell Grant program.  During the administrative process, the sufficiency of the Schools' records to respond to the PPR will be evaluated and a method for calculating the contested funds owed will be determined. Plaintiffs do not claim that the administrative process will be biased or unfair it its assessment, in fact, they allege to the contrary.  If at the end of that administrative process and the DOE's final agency action the Schools are dissatisfied with the resolution and method of calculation regarding who owes who and how much, and the conditions of the Schools' participation in the Pell Grant program, then the APA provides for a process by which the Schools may seek judicial review of that final agency action. Until that time, however, the Court lacks jurisdiction under the APA over plaintiffs' claims related to the DOE's administration of the Schools' participation in the Pell Grant program, and Count 6 of plaintiffs' amended complaint is dismissed.[6]

---

[6]  In opposing defendant's motion to dismiss Count 6, plaintiffs argue that they are not alleging a private right of action under the HEA or Inspector General Act, but claiming a failure of the DOE to comply with various procedural requirements with respect to the DOE's administration of the Schools' participation in the Pell Grant program regarding: 1) opportunity for hearing regarding termination from the Pell Grant program, 2) due process concerning refund liabilities, 3) compliance with reimbursement, refund and offset requirements, 4) notice regarding rights to offset and mediation, and 5) uniform application of regulations.

17

2.      Count 5

In Count 5, the plaintiff Schools allege the defendant United States of America breached the PPA with the Schools by failing to implement offsets and credits for Pell Grant funds allowed under the provisions of the HEA's statutes and regulations. The Tucker Act, 28 U.S.C. § 1491 (a)(1), waives the government's sovereign immunity for claims for monetary relief in excess of $10,000 founded upon government contracts. However, jurisdiction over such claims lay in the Court of Federal Claims.  *Id*.; *Suburban Mort. Assoc., Inc. v. U.S. Dep't of Housing and Urban Development*, 480 F.3d 1116, 1121 (Fed. Cir. 2007); *O'Connell v. Mills*, 2014 WL 354696 n. 8 (E.D. Mich. January 31, 2014).  The district court lacks authority to consider Tucker Act claims pursuant to its supplemental jurisdiction. *See U.S. Marine, Inc. v. U.S.*, 478 Fed.Appx. 106, 110 (5th Cir. 2012); *Dia Nav. Co., Ltd, v. Pomeroy*, 34 F.3d 1255, 1267 (3d Cir. 1994).  Further, the Schools' claims regarding monies due from the DOE for unpaid Pell Grant funds and breach of the PPA are the same claims that will be addressed in the HEA's administrative process.

The Court lacks jurisdiction over plaintiffs' breach of contract claims in the third amended complaint.   Accordingly, Count 5 of plaintiffs' third amended complaint for breach of contract is dismissed for lack of jurisdiction.

3.      Counts 1-4

Plaintiffs' opposition to defendant United States' motion to dismiss Counts 1-4 reflects that plaintiffs' constitutional claims in Counts 1-4 are asserted against the individual defendants and not against the DOE or the United States.  "[A] closer

---

Resolution of these issues is available under the APA following a final agency determination.

reading of the allegations within the Third Amended Complaint will plainly show that [Counts 1-4] are against the individual defendants for their personal actions in denying Plaintiffs' federal constitutional rights while acting under color of federal authority." ECF 114, p. 20.

The Court lacks subject matter jurisdiction over plaintiffs' claims for money damages against the United States based upon constitutional violations. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Accordingly, the United States' motion to dismiss Counts 1-4 is granted to the extent that such constitutional claims are asserted against the United States and/or the Department of Education.

B.     <u>Defendant Parrott, Greenblatt, Pawlak, and Flurkey's Motion to Dismiss (ECF 109)</u>

Defendants Parrott, Greenblatt, Pawlak and Flurkey move to dismiss Counts 1-4 of plaintiffs' third amended complaint. Counts 1-4 allege constitutional violations against Parrott, Greenblatt, Pawlak and Flurkey, in their individual capacity acting under the color of their federal authority, with respect to their conduct in connection with the Schools' participation in the Pell Grant program and compliance with program requirements, and the criminal prosecution of LaMarca.

Constitutional claims against federal officials acting in their individual capacities under color of their federal authority are known as *Bivens* actions. In *Bivens v. Six Unknown Named Agents*, the United States Supreme Court created a federal cause of actions against federal officials for certain constitutional violations. *Bivens*, 403 U.S.

19

388, 390 (1971).  *Bivens* claims arise against individual federal officials, not against the United States or an agency of the United States such as the DOE.

However, *Bivens* actions "do not cover every constitutional right and do not apply in every context." *Krafsur v. Davenport*, 736 F.3d 1032, 1035 (6th Cir. 2013) (citing *Wilke v. Robbins*, 551 U.S. 537 (2007) and *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)). *Wilkie* outlined a two-step process to guide courts in their determination of whether or not a *Bivens* remedy is available.  First, the court should consider whether there is an alternative existing process exists that is sufficient to protect the interests at issue, and second, if no such remedial scheme exists, are there other alternative tribunals or special factors counseling hesitation in creating a new kind of federal litigation.  *Wilkie v. Robbins*, 551 U.S. at 550.  "The Court has not created additional *Bivens* remedies where the design of the government program suggests that Congress provided what it considered adequate remedial mechanisms for constitutional violations that may occur in the course [of the program's] administration." *Jones v. Tennessee Valley Authority*, 948 F.2d 258, 263 (6th Cir. 1991) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 421-23 (1988)).

"If an 'alternative, existing process . . . protects' the right sufficiently, the courts must 'refrain from providing a new and freestanding remedy.'"  *Krafsur*, 736 F.3d at 1035 (quoting *Wilke v. Robbins*, 551 U.S. at 550); *Chilicky*, 487 U.S. 412 (1988) (no *Bivens* claim for alleged unconstitutional termination of disability benefits even if complete relief through the administrative process is not available).  Even in the absence of an alternative existing process, the availability of a *Bivens* remedy remains "a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed . . . to any special factors

20

counseling hesitation before authorizing a new kind of federal litigation.'" *Krafsur*, 736 F.3d at 1035 (quoting *Wilkie v. Robbins*, 551 U.S. at 550).  The availability of a comprehensive remedial process to resolve claims regarding conduct that plaintiff claims has violated his constitutional rights has been recognized as a "special factor" precluding a *Bivens* action.  *Bush v. Lucas*, 362 U.S. 367, 380 (1983).

The individual defendants contend that the availability of an administrative process to address plaintiffs' claims of unconstitutional conduct[7] precludes a *Bivens* action in this case. The case law is replete with cases concluding that the availability of an administrative process to address a plaintiff's complaint regarding an agency action, such as termination of benefits or incorrect calculations of sums due, precludes a *Bivens* action.  *See e.g. Chilicky*, 487 U.S. 412 (1988).

However, plaintiffs argue that the availability of an administrative process does not preclude a *Bivens* claim when the defendants have prevented plaintiffs from access to that process.  Plaintiffs distinguish the cases cited by defendants precluding a *Bivens* action when an administrative process is available on the basis that the plaintiff in those cases had either already availed themselves of the administrative process or *chose* not to avail themselves of the available administrative process.  In support of their argument that a *Bivens* action is available when defendants' conduct prevents access to the administrative remedial process, as alleged in this case, plaintiffs cite *Grichenko v. USPS*, 524 F.Supp 672 (E.D.N.Y. 1981) and *Rauccio v. Frank*, 750 F.Supp. 566 (D.Conn. 1990). Like *Grichenko* and *Rauccio*, plaintiffs argue that the defendants'

---

[7]  5 U.S.C. § 706(2)(B).

21

unconstitutional conduct deprived them access to the HEA's administrative process, and this denial of access properly supports a *Bivens* action.

However, *Rauccio* and *Grichenko* are distinguishable from the facts of this case.  In *Rauccio*, plaintiff was removed from his position with the postal service. Plaintiff filed an appeal with the Merit Systems Protection Board (MSPB), but before a hearing was held, the Postal Service rescinded plaintiff's removal and placed him on administrative leave and moved to dismiss Rauccio's appeal.  Subsequently, Rauccio's supervisors again removed him from his position, but after the MSPB determined that Rauccio was entitled to a determination on the merits of his removal, his supervisor once again rescinded the disciplinary action against him.  On these facts, the district court allowed a *Bivens* due process claim because the defendants (plaintiff's superiors) repeatedly foreclosed Rauccio's ability to pursue administrative remedies for his demotion and termination under the Civil Service Reform Act by rescinding plaintiffs removal to prevent him from appealing the merits of his removal.  In *Grichenko*, plaintiff brought a *Bivens* action against his supervisors alleging interference with his due process rights to present a disability claim to the Department of Labor by intentionally failing to timely process his claim under the Federal Employees' Compensation Act.

In this case, unlike *Rauccio and Grichenko,* the alleged conduct by defendants did not actually preclude plaintiffs from access to the administrative process. Rather, the unavailability of the Schools' records limited the Schools ability to respond to the PPR, although a response within those limitations was possible. As already discussed, plaintiffs concede in a related case that at least until LaMarca was acquitted, the DOE-OIG had a reason recognized by the law for detention of the Schools' records, and the

22

Court has determined in that related case that the detention of records exception, which limits the United States' waiver of sovereign immunity, applies to the Schools' records seized in connection with the criminal investigation of LaMarca.  *See* ECF 1:12 CV 664. If the United States had a legal right to detain the records and are immune from suit as that detention, then that detention cannot constitute an unconstitutional denial of the Schools' access to the HEA's administrative process or ability to respond.  Defendants have taken no action which actually foreclosed plaintiffs from access to the administrative process, however limited the Schools' response might have been.

Further, even if unavailability of records resulted in incomplete relief in the final agency action, that final agency action is reviewable by the courts pursuant to the provisions of the APA.  The availability of an administrative remedy – even an administrative remedy that may not provide complete relief as in *Wilkie and Chilicky* – precludes a *Bivens* action. Congress has provided a comprehensive statutory scheme for addressing claims under the HEA and provided for no private right of action or judicial review outside of the APA.

Accordingly, the Court concludes that in light of the HEA's comprehensive statutory scheme to provide administrative relief for plaintiffs' claims concerning Pell Grant participation and other remedies available to plaintiffs, a *Bivens* action is precluded.  As a consequence, Parrott, Flurkey, Greenblatt and Pawlak' motion to dismiss Counts 1 – 4 of plaintiffs' third amended complaint is granted and Counts 1-4 are dismissed.

CONCLUSION

For the reasons contained herein, defendant United States of America's motion to dismiss plaintiffs' third amended complaint (ECF 107) is GRANTED.  Further for the reasons contained herein, defendant Greenblatt, Parrott, Pawlak and Flurkey's motion to dismiss plaintiffs' third amended complaint (ECF 109) is GRANTED.

Also pending before the Court is defendant Greenblatt, Parrott, Pawlak and Flurkey's motion for leave to file a motion for qualified immunity and to stay discovery (ECF 95).  In light of the Court's ruling on the defendants' motions to dismiss, defendants' motion for leave to file and to stay discovery is moot, and denied as such.


July 23, 2014                                           s/David D. Dowd. Jr.
Date                                                    David D. Dowd, Jr.
                                                       U.S. District Judge